We'll hear argument first this morning in Case 13-352, B&B Hardware v. Hargis Industries. Mr. Jay? Mr. Chief Justice, and may it please the Court, the Lanham Act contains only one concept of likelihood of confusion. That is why the two tribunals in this case decided the same issue, and that is why issue preclusion is appropriate. Whether a court is considering registration or infringement or both at the same time, the statutory test is the same. Whether the resemblance of the marks, as used on particular goods, would give rise to a likelihood of confusion or mistake or deceit. Mr. Jay, there are exceptions to preclusion, even if it's the identical issue, and one of them is when the stakes are higher in the second proceeding than in the first, and indeed the restatement of judgments gives some examples of that. And it seems to me this is such a case, because it's one thing to say that we won't register your mark, and another to say you can't use the mark. There is an exception for when the stakes are different, Justice Ginsburg, but I think that the difference has to be a difference of an order of magnitude greater than we're dealing with here. So I think the best example in the restatement is the example of a small claims court. Small claims courts are set up in such a way that their designers understand their judgments won't be preclusive, and that's what gets people to litigate there. Here the stakes are different, but I don't think it can be said that the stakes before the trademark trial and appeal court are so low. Ginsburg's example of a small claims court is the closest. There's one on Section 83, which is determinations by an administrative tribunal, and the example it gives is of a scheme that contemplates an agency proceeding to be as expeditious as possible. And one way of assuring expeditiousness is to confine the stakes to the matter immediately in controversy. The matter immediately in controversy, though, in this case, the matter is the same, and the way that the stakes are different.  and the matter is the same, and the way that the stakes are different. The matter in controversy is registration, and in the second proceeding, it's infringement. That's correct. That's why there's no claim preclusion, for example. So in that sense, they are different. But the inquiry that the two tribunals are asking is the same. And I would like to think about the ways in which the Trademark Board decides issues that will be, I think everyone would agree, exactly the same in subsequent litigation, such as priority. Priority is the key to determining who gets to register a mark, who's the senior mark, and who's the junior mark. The Trademark Board frequently decides that factual question, who came first, who started using it in commerce first. And there's no reason to think that Congress would want that factual matter relitigated in a subsequent infringement action without regard to the proceeding that's come before. Scalia. I suppose in one sense the trademark determination is broader rather than narrower than the infringement determination, right? The infringement determination just applies to one alleged infringer, whereas the trademark registration would register the trademark as against the world. So I'm not sure that it's terribly narrower. Well, in the opposition or cancellation proceeding, Justice Scalia, there is a concrete dispute between the holders of two marks. But you're right that registration is a right nationwide as against the world that gives you priority as of a certain date. But the person who uses the mark can continue to use it. And the reason the restatement gives for the Expeditions First proceeding is that you don't want to make that proceeding pull out all the stops because it's going to be determinative of the infringement suit. But I think you could say the same, Justice Ginsburg, if the trademark trial and appeal board's decision were appealed to a U.S. district court or to the Federal Circuit. The stakes would be the same. The stakes would still be registration. But I don't understand the other side to be saying that that tribunal's judgment would not be preclusive because of a difference in the stakes. They're saying that the issues are different, to be sure. They're saying that the legal issue of likelihood of confusion in infringement proceedings is different than the legal issue in registration proceedings. But I think once you get past that argument, and I think the statute and the history and the structure all dispatch that, then I think that the — I don't think that the notion that the stakes are different can save Respondents from preclusion here. Alito, would you agree that if we accept your argument, the number of cases in which the elements of issue preclusion will be met by the TTAB proceeding will be relatively rare? And if that is the case, is it worthwhile to create a rule that applies only in that very limited set of circumstances? I think, Justice Alito, that the number of circumstances in which a rule would apply depends on the number of circumstances in which people seek to register the same goods that they're actually using. Now, it's certainly true that sometimes people file registrations for goods that they don't intend to use and that their actual use in real life will be different. But I do think that for the 40-some-odd percent of registrations that are — deal with marks already in use, that generally when an applicant comes to the Patent Office and says, I'd like to register a trademark for use on these goods, that it's the goods that that person is already using. So that under our rule, when the marks are the same, the goods are the same, and they're sold in the same channels of commerce, that's when it's appropriate for preclusion to apply. And I don't think that that's such a vanishingly small set of circumstances that you would say the game isn't worth the candle. I have a bit of a problem, okay? We have held that in CAPPOS last year, or two terms ago, I've now lost track of time, that an applicant who loses before the board can introduce new evidence at the trial. So we have made the assumption that an applicant doesn't have to produce everything. So what happens in the situation when there is new evidence? What kind of deference do we owe then? Is it — that's why I think Justice Alito said this might be a unique case, because I — and your adversary may tell me — tell me differently, the two proceedings had almost identical evidence. That is certainly our position, that the proceedings were the same. The only difference Respondent has identified is this point about the two-word phrase, building fasteners, which I'd be happy to come back to. But I want to make sure I understand Your Honor's question. You're asking what the preclusive effect of a district court's judgment would be if new evidence is— Sotomayor Just assume that there's new evidence that they want to present at the infringement  Waxman Oh, I see. Sotomayor So what's the charge a court gives? What deference does the court ask to be given to the board in that situation when it didn't have evidence that existed before? Well, I think that there are two different questions. One is whether the marks are the same, the goods are the same, and they're being sold in the same channels of commerce. And that's — that is what would line up the infringement proceeding with the registration proceeding. And saying I have new evidence that I would like to introduce that I didn't introduce before, you have the option to go up to the district court on review of the trademark board proceeding. You always have that option, and that's what — that is the significance of Capitalist v. Hyatt. If you don't take that option, I think you should not expect in the infringement litigation to say, well, preclusion doesn't apply merely because I think I have some new evidence. That's a bedrock principle of the law of judgments, that new evidence is not enough to get you a registered preclusion. Sotomayor But you're talking about the effects of full preclusion. If you could have, you should have. If you could have, you should have. Now, there certainly will be — there certainly are matters that the trademark board will not adjudicate, and there certainly are ways in which infringement litigation can differ, and the simplest way is if the goods are different. So if you seek to register a broad array of goods and the trademark board finds a likelihood of confusion based on that broad array of goods in your registration, but the infringement action turns only on one, you know, one good within that set, jeans instead of all clothing, for example, then I think preclusion wouldn't apply, and that's the way the Federal Circuit applies it, going in the opposite direction, that if infringement — if infringement — that no confusion justifies the judgment, turns only on a tiny subset of the goods listed in the registration, well, then, of course, the issue is different, because — Breyer And maybe this is what is worrying some people, that marks, you have a mark, I have a mark, and I have, oh, it's like Louis Vuitton or something. I mean, it covers just thousands of things, and there is one manufacturer who makes one of those things. And he really thinks, I don't have to worry about this, you know, if I win or lose, it's not that big a deal, I don't think they're going to come into my area, really. The competitor in one small thing, like a lipstick or something, he doesn't think there's going to be Louis Vuitton lipstick, though there may be. And sure enough, it is there, and sure enough, he does do it. So he just doesn't want to go to the time and trouble of having every possible bit of evidence and so forth, and then, lo and behold, later on, it turns out this is a very big deal for him. And what he's worried about is that that means I have to look at every trademark application, I have to give my all the first time, and if I don't, I'm stuck. That's true, isn't it? Well, it is true that whichever forum he goes to first, whether it's the Trademark Board or a court considering infringement, yes, he's supposed to give his all the first time because the judgment can be preclusive in future litigation. But — and I think that the reasons to pay attention to registration in the circumstances that you gave are significant ones, because if he just lets Louis Vuitton sit there in the market with a registration for five years and Louis Vuitton's mark becomes incontestable, then he has to face the consequences of that. So I think that people who are already in the market and see a junior mark holder coming in and seeking registration, they have reasons to oppose that registration. But if they don't want to go to the board, they don't have to go to the board. No one ever has to go to the board who doesn't want to, because you always have the option of getting a mark canceled or getting your mark registered. You can do that in district court, coupled with an infringement action. So if you are the senior mark holder, sue for infringement, and you will have a jury trial right. If you win, then you can get the opposing mark canceled, provided that it hasn't become incontestable. That, I think, is a large part of our answer to the other side's argument about the jury trial right, that there's always the option to sue. There's also always the option to get Article III review of a judgment of the Trademark Trial and Appeal Board. The board is just deciding a question of public right. It's not trenching on the role of Article III judges. But once it renders such a judgment, as a matter of preclusion law, as a matter of statutory text, its judgment is preclusive, because it's deciding the same issue and under this Court's decision in Astoria v. Solomino. Kagan. Do you happen to know what proportion of people in the situation that Justice Breyer indicated do go to the board? Is the board the primary avenue, or is it not? That's a difficult question, Justice Kagan. I know that there are more board proceedings filed each year, opposition and cancellation proceedings filed, than there are infringement actions or trademark actions filed in the district courts. I know, however, that a lot of those don't go to final judgment, precisely because I think often the mere filing of an action in the board can alert the, perhaps the junior markholder, that you're junior to someone else. You're going to have a problem if you don't either, A, reach an accommodation, B, limit yourself geographically, C, choose a different mark. And I think that the board's proceedings may well be more conducive to that than litigation. But in the — there are, I think, fewer than 200 board cases that go to final judgment each year in contested proceedings. And I'm not sure how many trademark cases actually go to final judgment. When you say to final judgment, you mean final judgment before the board or final judgment after review in the courts? I mean final judgment before the board, Justice Kennedy. The number of litigants that actually go on and seek review, as you would expect, is smaller. But there's certainly always the option to seek review, either before the Federal Circuit under the APA standard of review or in district court. And if you go to district court, you can, if you choose, introduce new evidence. Sotomayor, you have alternatively argued in your brief for some form of deference, if we're not going to call it preclusive. It seemed to me that that was addressing an issue you didn't seek cert on, which was whether the court below erred in not permitting the markholder to tell the jury that the board had found a similarity and confusion. But I don't know that you've actually made that argument, number one. And number two, on what would you base a holding of deference, and what field of law do we say give deference, and how — what's the standard that we would use? The first, Justice Sotomayor, let me be clear, our primary position is, of course, preclusion. And the only reason that we would get into deference is if preclusion doesn't apply, because even though it's the same issue, for some reason the trademark board can't render a preclusive judgment. And we think that that issue is what's not properly been preserved because the other side waived it at the cert stage. But if you got into that, we think that what you would look — and this is why we put question 2 in our cert petition, and the Court granted both questions. What you would look to, I think, for example, the arbitration cases like Alexander v. Gardner, Denver, in which this Court decided that an arbitration in a Title VII action would not be — arbitration would not be preclusive of a Title VII action. But the fact that the same parties had litigated the same discrimination issue before an arbitrator with perhaps the same evidence was entitled to evidentiary weight. And perhaps if the proceedings were full and fair and the issues really were the same, perhaps great weight. And this, I think, is the final footnote in Gardner-Denver and then in McDonnell v. City of West Brant. Ginsburg. Were those in days before you could get a jury trial in a Title VII case? The Court, I believe, had not yet held that at that point, Justice Ginsburg. So I think that's — I think that's correct. But I don't think that the jury question has any effect on this because, you know, for example, there's a jury right in a 1983 case. There's a jury right in an ADEA case. Ginsburg. But what disturbed the Eighth Circuit on that point was that the jury would be powerfully confused. It has enough to deal with what the charge in the infringement case is. It certainly would require an explanation of what went on. But I think that that would have been better than instructing the jury, as was done here, that the two proceedings involve completely different issues and that the jury should not give it any weight at all. If I may at this point, I'd like to reserve the balance of my time. Thank you, counsel. Mr. Bash. Mr. Chief Justice, and may it please the Court, Respondent has not identified any material difference between the issue decided by the Board and the issue — and what was at issue in the infringement case. For that reason — Mr. Bash, that's a very much stronger statement than your briefs make. So your briefs go likely and probably and this and that. And so are all your likelihoods and probabilities no longer true? Well, the likelihoods and probabilities were an opening for Respondent to identify a material difference between the suit and the Board proceeding. The reason we did that is because we were framing the standard in a slightly different way than it was proposed below, and we think if the normal course of proceedings had happened, Petitioner would have asked for summary judgment and then Respondent should have come forward and identified some difference in the goods or marks or channels of trade, and then the district court and potentially the jury could have considered whether that difference was material. The issues weren't teed up like that in the courts below, so we wanted to give Respondent a fair opportunity to identify a difference between what happened in the Board and what happened before the Court, and Respondent has not identified any difference that we would consider material under our standard. All right. That's even — that's another fudge word, material. They have represented one, which was the use of the mark with the word fastener or whatever it was, that — that the Solicitor General's office referred to earlier, that Mr. Jay referred to earlier. So get to the stuff you think is immaterial. So the only difference that Respondent has identified is what we would characterize as a different mark, seal-tight building fasteners versus seal-tight. Now, I think Petitioner has demonstrated that seal-tight building fasteners wasn't even really an issue in the trial, but even putting aside that factual distinction, the ordinary rule is just adding a generic term, like building fasteners, can't make the difference in a preclusion analysis. So I think the way it should have worked, had everything gone sort of the correct way, is that Petitioner would have said, hey, the Board proceeding gets issue preclusion in this infringement suit. I'm suing about the word seal-tight, which is, by the way, what the jury was instructed on, not seal-tight building fasteners. Respondent then could have come forward and said, well, actually, the mark is a little different now. It's seal-tight building fasteners or seal-tight screws or seal-tight nails. And at the summary judgment stage, the district court would have had to make a judgment about whether that was a sufficiently different mark to obviate issue preclusion. And the material standard is not just drawn from thin air. It's the ordinary standard in issue preclusion where the question arises whether the second tribunal is considering a fundamentally different issue than the first tribunal. I think in Montana v. United States, when this Court talked about the changed circumstances principle, it adverted to that principle. And it really has to be that way. I mean, just imagine the court-to-court scenario, infringement court at time one and then infringement court at time two. Surely, if Petitioner had obtained a judgment that the mark seal-tight infringes in an infringement court, Respondent couldn't then just add fasteners and start  And then once it was like that, it wouldn't be a problem. Ginsburg. But how do you respond to the question I asked Mr. Jett, that is, as the restatement of judgment says, if one aspect of the first proceeding is to assure expeditiousness, then confining the stakes to that issue, your registration, makes sense, and so that the parties will not be induced to dispute the administrative proceeding in anticipation of its effect on another proceeding? Justice Ginsburg, I think that's a correct statement of the law, but it's inapplicable here. I think it has two components. One is how expedited are the proceedings here, how close is it to small court. The other is what's at stake. So let me just take both of those in turn. This is not like small claims court or arbitral court. This is a proceeding in which you have the full discovery permitted by the civil rules. In fact, with respect to interrogatories, three times as many interrogatories as in the civil rules. The full Federal rules of evidence, including e-discovery, it's just like a civil proceeding. And, in fact, then you can't But there are some differences. There's no live testimony, right? There's no live testimony, but I don't think that has ever been understood as the sort of difference between an administrative tribunal and a judicial proceeding that could effectively mean that there wasn't a full and fair opportunity to litigate the question. One of the amicus briefs suggests that this is very, very much less expensive, so that it's like 10 percent of the cost of an infringement suit. Why is that? Because in an infringement suit, the most discovery-intensive aspects, I think, are often damages and injunctive relief. In other words, you really have to look at the other side's books to know how many of these products did you sell, what were your profits, and so forth. So it's not surprising that in a suit where damages or injunctive relief is at issue, it could be, you know, four times the cost for discovery purposes of this kind of suit. Scalia. I find it hard to believe that this board proceeding is intended to be expeditious, because the losing party can go up to the district court and start all over again. De novo. Thank you, Justice Scalia. How is that expeditious? I don't understand that. I was going to follow on to my answer to Justice Ginsburg by making that point. I mean, you have a full de novo trial in district court if you want it, and that doesn't reflect the sort of proceeding that Congress would have thought was summary in nature. And I would just add one, I guess, higher level point about the nature of the proceedings, which is that I think that can come into this case in two ways. One, you could think that Congress would not have intended these proceedings to get preclusive effect because of their summary nature, and I think that's how Respondent is using. But that doesn't work, because Congress did not set the procedures for the board. Section 1123 gives the director authority to set the procedures. Breyer. That's what I think you'll hear in a minute, that in the brief, the red brief on pages 30 to 31 and 8 and 9, there is a discussion about the evidentiary procedures before the board, and the Respondent says they are much more limited. One, you cannot call live witnesses. Two, the board continuously says that they should not be like a district court. They should be far more limited. So I guess the argument is, well, in light of that procedural difference, he can't call all his witnesses. He can't test the consumer experts of the other side who say that there is no confusion, and he can't present his very credible expert who will come up and say, I interviewed 4,000 consumers and they're totally mixed up. So if you have that, would you address that? I will address that. The only significant difference is no live testimony in front of the adjudicator. There is written depositions where the experts testify, they submit reports, and they can be cross-examined. So the only significant difference is no live testimony in front of the adjudicator. And as you know, that is a principle embodied in the APA as consistent with ordinary administrative action. The adjudicator in an administrative tribunal does not need to hear the witness. That's embodied in the APA provision cited in the reply brief. The other different purported differences that Respondent in one of the amicus briefs have identified are not actual differences. They're quoting snippets of TTAB decisions where the board was perturbed that the given the narrowness of what we're deciding, in one of the cases it was descriptiveness, you don't need to engage in full-blown discovery. The rules and numerous TTAB decisions make very clear that full e-discovery is allowed. The only other, I think, difference or purported difference identified in one of the amicus briefs was consumer surveys and the idea that they will only accept a consumer survey where it has the word on a blank card. That's true, you know, just the word seal tight on a blank placard. That's true when what is sought to be registered is a word mark, not a design mark with a particular color. The idea being that you can't skew the survey by adding colors and things when actually what you're seeking registration for is just the word. But the same thing could have been in an infringement court. If the defendant was sued based on their registered word mark, I think a fact finder in an infringement court would say a survey that has design elements, color, font, and so forth, when you're asserting the right to use this word in any context, that sort of survey is not going to be as probative as a survey that just uses the word, since you're seeking the right to just use the word. Kagan. Mr. Bash, could you go back? I think it was to Justice Alito's question before, and just talk a little bit about do you think that this is an unusual case in that the issues are the same, or a usual case? I don't have statistics, so I'm sort of speaking just from my experience reading the case law, but I don't think it's terribly unusual. I mean, I think a lot of times people seek to register a mark for the goods they sell. And so an infringement suit is going to involve the same goods in the channels of trade those goods are ordinarily sold in. So I don't think it's a situation where issue preclusion is not worth the candle. And, in fact, I think it's extraordinarily administrable, in fact, more administrable than the average just litigation context, because the limitations in the first action, in other words, what goods were at issue, what marks at issue, what the channels of trade are, are often just set forth right there in the registration. So it's not like you have to conduct a searching inquiry to figure out what was at issue in the first administrative proceeding. You look at the registration. If no common law rights are at issue on the opposition side, you look at the opposer's registration and you say, okay, this was about cars sold to retail consumers. That's what was at issue in the board proceeding. If now we're talking about cars sold to government or municipal entities, that is potentially a materially different issue. And then you have to make the sort of materiality judgment that courts make every day. But I guess I just want to close with, I think Respondent's primary textual argument that what is being considered here are different issues is that the registration provision uses the word, the phrase, so resembles, and the infringement provision, 1114, uses the phrase, used in commerce. But, I mean, as you can just see from the text of the provisions, they both are about the marks being used in commerce and whether the marks used in commerce would confuse people. If I could just finish one sentence. The — and in the infringement provision, the phrase, colorable imitation, is defined, as the reply brief points out, as so resembles. So the textual provisions are precisely parallel. Thank you. Roberts. Mr. Katyal. Katyal. Thank you, Mr. Chief Justice, and may it please the Court. Congress designed the trademark registry as a relatively low-cost signaling mechanism to provide notice. But Congress made clear that the main event, the conclusive determination of the right to use a mark in commerce, was reserved to Article III courts with robust procedures and sweeping remedies. But you do have that alternative before — after a board action. We certainly do with respect to district court review. It's de novo, and that's one reason, Justice Sotomayor, why we think when we're formalizing whether Congress intended to adopt a preclusion doctrine, we think the answer to that is no. That is — Sotomayor That's my problem, which is it seems to me that you're rendering the board proceeding almost irrelevant with respect to litigation. And it may be when you're seeking de novo review, but why should we say that you get a second bite at the apple after you've wasted the board's time? Why not just tell you, go straight to — if you're going to wait for an infringement action, go there? Right? Well, I think that Congress did intend that the district court — that the TTAP proceeding was rendered largely irrelevant when there was district court de novo review. Except that in Capos we explicitly said that some weight should be given to the board's judgment. So it's not as if it's being ignored altogether. Right? Precisely. But when there's new evidence, as there was in Capos, then it is de novo review. And this Court in Astoria said when that occurs, that when you have a system like that, that's Congress telegraphing that they didn't intend for preclusive review to exist. That is to say, why would Congress have said that the TTAP decisions over registration, something that they have absolutely— Sotomayor But that's not what happened here. The Court below said, no, you can't give a jury and you can't describe to this jury what the trademark board did. You can't decide whether it was the same evidence and how much weight to give. That's not the path that was followed here. Well, I disagree, Your Honor. In this case, the jury was told about the TTAP determination at several points in the record. Now, it's true that the district court ultimately said, look, at the end of the day, these are different questions. This is what Joint Appendix page 247 says, that the district court said after review of all of this, it was different evidence answering a different question. And fundamentally, the different question that is at issue in TTAP or district court de novo review is this. It is, you know, when they do say the same concept, likelihood of confusion, but the subject is very different. That is, in a registration decision, the question about what is likely to confuse is a resemblance, a confusing resemblance, whereas the question under the statute with respect to infringement is a confusing use. Now, that distinction has persisted for 150 years, since the year 1870. And I think that you could endorse the type of statutory gymnastics that my friend from the government does to say, hey, these are the same inquiry, but at the end of the day, that is against everything this Court's precedents teach, which is that when Congress uses different statutory formulations and different provisions, they are deemed to mean different things. And here, you know, my friend from the government concluded by saying, well, you know, the statute defines confusing resemblance — excuse me, defines — defines a colorable imitation as a resemblance, and so therefore, the inquiries are somehow the same. Absolutely not, because what the trademark infringement statute says, 1114, is not simply that you need to have a colorable imitation. It's that you need to have a colorable imitation that in its use causes a likelihood of confusion. A colorable imitation alone is not enough. You've got to have both that colorable imitation or resemblance, plus the use of it. That's what causes the infringement, and that's the heart of the infringement inquiry. Scalia, and you have all of the amici, all the trademark practitioners before you on behalf of neither party or on behalf of us telling you that is not what the      confusion. I'm not going to go into the details of how it's applied, why, because, yes, it mentions the word use once with respect to in connection of the goods, but that's only to connect the fact, the mark, to the fact that it is being applied to certain goods. Every amici is telling you that the way in which the TTAB interprets that statute is to say that the ultimate focus is on the confusing resemblance. This case is a perfect illustration of that. The TTAB here said, look, we're going to look to whether or not these are the same things, basically, are these bolts or not, and not to how in practice it's actually used, and that is why. Scalia, even in use, what causes the confusion will be the resemblance. I don't care if you just add or tack on as used. The problem is the resemblance between the two marks. In every situation, it seems to me. Justice Scalia, here's our key point. It's not simply the resemblance. It's how the products are used in practice. It's how they're marketed, how they're sold, to whom they're sold. In this case, for example, Justice Sotomayor. Sotomayor, was that presented to the board in this case? Excuse me? Was it presented to the board? What's the it? I'm sorry. That answer, how you use the mark, the market. I thought the board did, because we tried to put some of that evidence in, Your Honor, but as the amici are saying, and indeed as the decision in this case reveals, ultimately, the way the TTAB decides doesn't really weigh actual use very much at the end of the day. That is, you can have all the inputs of actual use that you want into the TTAB process, but the question the TTAB is answering, by the fact that that's the case, it's  Sotomayor, did you answer my question, was all of that, was the same evidence? Absolutely not. And so for it, let me just, let me respond to what, to the question that you were asking my friend before, was the evidence the same? Absolutely not. So in the TTAB proceedings, there were a whopping four depositions introduced and zero discovery, zero discovery. In the trial, 14 live witnesses over a seven-day trial with 4,000 pages of discovery. This mirrors, as the amici say, the way that these proceedings generally unfold. And here are some of the differences. The jury was told, the jury trial had lots of evidence about customer sophistication. And indeed, the district court, on summarizing that evidence, said, and this is at joint appendix, this is Petition Appendix page 37, that that evidence was overwhelming, that this was not kind of people going to Ace Hardware, the customers like that. This is a very sophisticated set of customers who knew exactly the difference between the types of bolts. Now, the TTAB, and this evidence could not have been introduced before the board. To be sure, it was not introduced, but could it have been introduced before the board? It could only be introduced to limit the mark, and that's what the amici say. That is, and this is a technical part of trademark law, but here's how it works. Basically, when the TTAB is examining evidence of actual use, they can use it to determine whether or not, what the mark means. So you can introduce evidence about what is a building fastener, but you can't introduce that evidence to somehow limit the meaning of the mark. So the mark here is simply the word seal type. That's what Joint Appendix page 70 says. You couldn't, and TTAB couldn't, and all the amici are before you saying that the TTAB couldn't take actual use evidence and say, well, it's only sold to this type of consumer or that type of consumer. That wouldn't be something that they could do. Breyer, I don't know if you have time, but with an example, the reason I'm having a hard time, I'm thinking Louis Vuitton. Say, all right, now, Louis Vuitton wants to register a mark. Okay? So we go to the TTAB, and it's for lipstick. And Louis says, look, it says Louis Vuitton. And Louis says, yeah. And now the question is, well, will it cause confusion when used in connection with the lipstick? So we look at it. All right. Now we're in the infringement action. Exact same situation. And here they are supposed to say, will it cause confusion when you – when – will it cause confusion in connection with the sale of any goods or services, which includes the lipstick? So I'm having a terrible time seeing what the difference is. Well, Justice Breyer, the difference is exactly what you just said there, which is that I just think the statute, in the infringement statute, 114, mentions use repeatedly including advertising, sales, all different ways in which use causes confusion. And the ultimate question that's being asked is, does that use, does such use cause confusion? And it says the same thing here. It says, does it so resemble a mark as to cause confusion? But it is – Like when used in connection with the goods. Exactly, Justice Breyer. But there it is, the mark's resemblance that causes confusion. And to be sure, you can look to the fact that it's lipstick. It's a resemblance in connection with the goods. The fact that it's goods, but not how the goods are used, the advertising, the marketing, the sale, that's the difference. Not how they're used. Okay. So what about saying this, then? We'd say, if it turns out that in your infringement case that was really an issue, you know, that was really a big deal in this – a serious deal in this case, that it's not because of the use of the goods, it's because of the resemblance through advertising cures it, then you don't have it not precluded. You're only precluded in the case the SG says, which is where everything's really the same. We have two answers to that. The first is, as Justice Ginsburg was saying earlier, when the weight of the proceedings has differences at stake, then preclusion shouldn't apply. But the second, just to deal with that, is that if the mark itself claims some sort of limited sale, limited category of people to whom it's being sold to in channels of trade and the like, then that actual use evidence can come in. The red brief at page 47 gives you a bunch of cases from the TTAB as well as the Federal Circuit, cases like Octocom, cases like Mayor Berkshire, in which the TTAB is told it's actually error to introduce evidence of actual use. Now, why is it error? Because if you have a general mark, like the mark seal type, it's not being limited in any way to particular channels of trade or particular ways in which it's sold. If it is. Kennedy, would the same rule apply in a de novo review of the board's actions in a Federal district court? We do think that it would apply, and I don't take my friend on the other side to be arguing the reverse. Yes, you could have live testimony. That aspect falls out. But still, the overall statutory inquiry is about whether the mark has a confusing resemblance. And I was going to ask you, in your answer to Justice Scalia, in which you talked about the narrowness of the issues, you would make the same comments and give us the same instruction regarding what issues and what evidence is presented in the district court on de novo review? That is right. That our view is that even if evidence is introduced at the district court de novo stage, that still doesn't cure the fundamental problem. Preclusion shouldn't apply, both because the question being asked is different, as well as the procedures by which they are adjudicated. For example, no jury trial in the de novo review proceeding means that the full panoply of kind of rights that adhere when this Court, when Article III courts are asked to decide a longstanding common law tradition, such as the right to infringement. The issues are not always different. Just as Breyer's lipstick example, I mean, that's sold in a retail market. So the question is not there isn't going to be a different use from what the TTAB is looking at and what you want to be able to look at de novo. But I gather in your case, you say these building fasteners, people don't go buy them like they buy lipstick. It's only more sophisticated general contractors. So why isn't that enough of an answer to say that as a general matter, the TTAB provisions are preclusive, but if you are showing a different, a difference in use or a more specialized use or something other than what the TTAB would have been looking at, preclusion doesn't apply, which I gather is the way preclusion normally works. I'd say two things. Number one is I don't think that argument is available to the Petitioner since they hadn't advanced that particular argument, and if they did, I think it would run headlong into the district court's conclusion at page 28A, that the evidence here was so different, even giving all sorts of deference. Well, I'm more concerned if the argument is available to you. I mean, in other words, you're the one that is asking for the absence of preclusion. And it seems to me that you could prevail on the idea that when the uses are actually different, it's not precluded, but when they are not, when they are the same, it is. That's the basic preclusion rule. Well, I think that ultimately, though, the basic preclusion rule is caveated in two different ways. One is the inquiry actually has to be the same. It has to be an identical inquiry. And the second is that the procedures and the incentives at stake, as Justice Ginsburg was saying, have to be the same as well. We think the answer to that, to both of those, is no. That is, even in when the registration analysis is looking at evidence of actual use, it is looking to it for a different purpose. It's ultimately asking, is the resemblance confusing, not is the actual use confusing? Now, I imagine you could have some theoretical world, some hypothetical in which the TTAB is deciding the exact same actual use question as in the infringement action. The interbrief at page 20, filed by the trademark practitioners on behalf of neither party, says that theoretical world never happens in reality. Scalia, would you give me an example of a situation in which the use is confusing, but the resemblance is not? Sure. So the confusing use is, suppose that the trademark office allows the registration of the word Psyche, S-I-K-E, to put on shoes. It's a general standard logo. It doesn't have any particular, you know, it doesn't have any particular marks or anything like that, no stylization. We put on shoes? Yeah, put on shoes, but it's just S-I-K-E. That may be not create a likelihood of confusion in its generic, broad, just character form, but when it is applied at the infringement stage with the swoosh of Nike and the like, then you could find a confusing use. And by contrast, it's not. I'm asking for an example where there is a confusing use, but not a confusing resemblance. That is one, Your Honor, in which the confusing resemblance, because the confusing resemblance for registration is decided in a kind of paper way with usually standard character marks. In other words, no stylization, no font, no book. Before the board you're talking about. Exactly. Before the board. Never mind the board. Doesn't the court that is deciding whether this is an infringing use, doesn't that court have to decide whether that use is confusing by reason of the resemblance? Not simply that's our whole point in what I was saying to you earlier. It's not simply the resemblance that causes infringement. It is the use as well. So if the mark itself is being used in a generic way, that doesn't, that isn't itself a confusing. Breyer, it says right here, so resembles a mark as to be likely cause confusion when used on or in connection with the goods of the applicant. So why doesn't Nike say, look at the Psyche mark, look at how it's used, as it's used and we use ours with a swish, of course it causes confusion. Wouldn't they be free to tell the board that? Justice Breyer, the answer to that is no. They can't? That is, in the board proceeding, they can't look to evidence of stylization, packaging, the way in which it's actually used. They can look to the good, the fact that it is a shoe, but they can't go further than that. And that's the answer, that's why all those cases, Octocom, Mayor Berkshire, the New York football giants case, as well as all the amici are saying, that's not the way the board works in practice and it's guided by the language of the statute. Because the language of the statute refers to use being confusing three times with respect to infringement and how. Kagan, I guess I'm just not understanding what you're saying, I'm sure it's me. But if you put this mark on the sneaker and then you say, well, is it confusing as it appears on the sneaker, isn't that exactly what the TTAB is asking? Look, here is this mark, here is this good, here is this mark on this good, is that confusing? Justice Kagan, the mark that is being put on the good in the registration inquiry is the mark that is being claimed. Mark is a specific term of art, it's defined in section 1127 of the statute, to mean the actual word in the application. Here it would be seal tight, in my example it would be psyche. It's not how the mark is used. Roberts, you're saying the mark is just S-I-K-E without the sword. Exactly. And indeed, the PTO encourages all registrations to have that kind of generic mark in order to facilitate this kind of low-cost registration notice system that I was talking about. Isn't the swoosh itself a mark? The swoosh itself may be a mark. So you've introduced another mark. I don't see how your example works. Well, then to use the actual word in psyche in the way that Nike uses it, you know, with the same kind of stylization, color, logo, all that kind of stuff, that is, it's often the case that registration, confusing resemblance, is a broader category of circumstances than confusing use. What's the answer? Would that be confusing? It certainly could be. I need to know the answer to the hypo. It certainly could be a confusing use, yes, Justice Kennedy. And the district court would hear no additional evidence that the board would not have heard other than the difference between oral and written? No. The district court in an infringement action would get a no on de novo review. On de novo review. Right. In the district court's de novo review proceeding, and this is what the amici are saying, it focuses on really the abstract question, unless there's one exception to that. The exception is if the mark that is being sought, and this is what I was saying to Justice Kagan, does limit itself in some way. So if psyche sought to register a mark that actually had the colors and the particular distinctive font of that Nike uses, then of course that evidence about actual use could come in. But when you were having, as a circumstance, a confusing use.     And I think that's what the board is saying. Sotomayor, you keep saying we tried to put it in. Did you put it in? The board did recite that they were used in a different market, and a lot of things  Justice Sotomayor, there's no question, I think, in my mind in this case, that they didn't have the same evidence. If you look to, for example, the customer sophistication. By the way, is there a record? I should have looked for it earlier. Is the trademark record before us in the joint appendix? I'm not sure if the trademark record is. The trademark opinion ultimately is. Yes. No, no, no. The record that was submitted to the trademark. I'm not sure if the full record is before you. We can obviously try and get that to you if you'd like. But let me suggest to you that if you look, for example, at customer sophistication, the district court says the evidence on this is overwhelming, that this is a sophisticated group of consumers as to which there is, and after based on lots of live testimony, lots of different witnesses, whereas the trademark board said the reverse. They said, it's hard to tell which way this cuts. There's very limited evidence one way or the other. Same thing with the word seal-tight building fastener, which the district court at page 35A said there was evidence at trial that seal-tight, Hargis, always used the entire phrase as one thing, seal-tight building fasteners. Why is that important? Because if you're using building fasteners in connection with seal-tight, you're not going to confuse people who are buying screws for the aerospace industry or something like that. It's limited to building fasteners. Mr. Katyal, if we want to check up on what you're saying about these limitations, where would we look? Where does the board say we don't look at use in the way that you're saying they don't look at use? Let me read to you from the OCTACOM decision. This is from the, this is, this is at page 47 of our brief. It was not error for the board to give no weight to evidence that OCTACOM modems are brought by a particular class of purchasers, with an error to do otherwise. Because the party seeks an unrestricted registration, such evidence of a specific class of customers didn't relate to a material fact. Kagan. You know, I'm doing this quickly and on the fly, but isn't that the key phrase, unrestricted application? Exactly. They sought an unrestricted application. Exactly. Here, there's not an unrestricted application. No, there is, Justice Kagan. The application is at page 70. It is only for the word seal-tight. It is not to a specific class of purchasers, such as a sophisticated group of consumers that the district court found so crucial in finding no infringement. Is that your one case or do you have others? Sure. Mary Berkshire says the same thing. This is at 424F3rd at 1232. A claim of infringement before the court and likelihood of confusion before this board are different claims. In board proceedings, likelihood of confusion is determined independent of the context of actual usage. In an infringement action, on the other hand, the context of the use of the mark is relevant. It could not be clearer, Justice Kagan. And that's the way this is done in practice. Mr. Katyal, Justice Scalia suggested that these are not expeditious proceedings before the whatever is TTAB. And what is the situation there? I know it's a lot less expensive to go to the board than it is to go to a court, but how rapidly are these processed? I think the amici are before you, all of the amici, saying that it's a much quicker process that tracks Congress's intent, which was a low-cost system that was going to provide notice. And if you adopt my friend's argument on the other side, as all the amici are saying to you, you do incentivize the hargesses of the world to come forth and in the registration they may not seek registration at all, because the cost of doing so, as was suggested in the first part of the argument, is now going to be so high. You're stuck for all time, this is Justice Breyer's earlier Louis Vuitton example, you're stuck for all time with, because you happen to litigate registration in the TTAB, now being, now it is preclusive in an infringement action down the road. Alito I thought you said that the preclusion analysis would be the same if there were de novo review in the district court. So if that's the case, then how can you rely on the nature of the TTAB proceeding alone? Well, it's a nature, because even in the district court, the process isn't the same as an infringement in two different respects. One is, of course, there is no right to a jury trial, and we do think that there are some constitutional doubts that are engendered by my friend's reading on the other side. And second, the question that is being asked in de novo review is ultimately a different one. It's about whether or not the use is confusing, not whether the resemblance is. Alito Well, I see all those points, but do you claim that the district court proceeding is expeditious and for that reason there would be no preclusion? No, we're not saying that the — at least the district court process does have the robust Article III and jury protections available to it. If the jury decides first a finding of infringement, we do think, as our brief points out, that a separate statute, 1051, would make that preclusion — not preclusive, but would simply bar — bar the registration of that mark. And I think that's an important point, because Congress here did something, and this is what our red brief at page 30 says, with respect to registration decisions. They actually thought through, how is registration going to matter at the infringement stage? And they said, look, it's going to give you certain things. It's going to give you presumptions of validity, presumptions of ownership and the like. But nowhere did they do what, for example, they've done in the Patent Statute in 35 U.S.C. 315 and 325 and affirmatively buy into the preclusion doctrine and say — Breyer, a quick question. If you're right about the difference between resembling causing confusion and using preclude in connection causing confusion, then if you go to the review procedure and you go to the full district court, that doesn't preclude either. Exactly. So there's no preclusion whether you go to the district court or not in your basic statutory view there. That is correct. But it seems to me that — and I'll check what the experts in this area say in the amicus priest — but it seems to me that the fact that this is a simpler proceeding and a person concerned about cost would want the simpler proceeding and would want the preclusion. Well, Your Honor, sometimes they may want that once they've already made the decision to register. So our point is twofold. First, people like Hargis may not seek registration in the first place. And second, as the amicus are saying, if they do seek registration, then they have to do, Justice Kennedy, exactly what you're saying, which is litigate to the hilt and turn that district court de novo review proceeding into an infringement trial. And that's antithetical to what Congress wanted. Congress wanted a low-cost system to incentivize people to come in because it generates positive externalities. I'm not sure that I buy that, because to the extent that someone's not going to settle and go away or get a sublicense, why should we be now inviting, instead of a district court proceeding, inviting an infringement action? I mean, that will – that's going to be more lengthy no matter what, because then damages and a lot of other things are involved. Because, Justice Sotomayor, the registration decision at the end only decides a very limited thing. It doesn't decide the right to use the good. That's something only infringement does. That's why that's kind of – it's kind of the main banana is infringement. Congress has known that. That's the way it's been for hundreds of years. There isn't going to be any sidestepping of an infringement inquiry in an appropriate case. It's going to happen. The question, then, is do you want a litigant like Hargis to be stuck with a limited record, with limited evidence on a limited question, particularly when, as I was saying to Justice Scalia, the registration question that's being determined either in the district court or in the TTAB is generally a broader one. It's about the paper mark. And there's easier to find likelihood of confusion based on that paper mark than you can in actuality. And so someone like Hargis, in which you've had a jury trial finding, look, no infringement, indeed, they had to – the evidence was so weak on likelihood of confusion that they had to manufacture some of it, those types of rulings will never be able to happen because of an administrative process, a stripped-down process that didn't the right question at the end of the day, which is, is the use of the product, looking at the stylization, looking at the way it's done in practice, looking at the customer sophistication and the like, is that use actually causing confusion? This case is a perfect illustration of why you wouldn't want to have a preclusion rule in practice, because there's no infringement at bottom line here when the product's actual use is being decided. The only way you can find the likelihood of confusion is by looking to something more abstract, the resemblance and the similarity of the goods alone, only the goods, not the way in which the goods are actually being manufactured and being sold. Kagan. I'm just looking here at the TTAB's analysis and it seems to me it's loaded with stuff about use. It says, ''B&B's sophisticated fasteners are primarily used in sealing applications, while Hargis's products are the next step up from a nail and are not made for sealing. Justice Kagan, there's no doubt that they recite that as part of the facts, but at page 70 they say the determinative factor here is the similarity of the goods and not the similarity of the goods in the actual marketplace, because as the district court found, these goods actually don't compete in the marketplace whatsoever. Sure, some evidence is going to come in at the front end. Our point, Justice Kagan, is at the back end, the process that is the TTAB, the question the TTAB is deciding ultimately is about confusing resemblance, and that is a lot easier. Again, it says the products of the parties move in different channels of trade. It says it's the use of substantially identical marks on closely related products. Well, Justice Kagan, our point is not our brief acknowledges that, that oftentimes the TTAB, some evidence of actual use comes in, but it comes in to answer a different question. It's kind of like Montana v. Egelhoff, the dual intoxication case. Some evidence about alcohol can come in to determine whether or not someone had the first degree murder intent. Other evidence on intoxication might come in in a different trial to determine whether or not someone had the physical ability to pull the trigger. The evidence comes in in both cases, but it's asking a different question at the end of the day. The resemblance inquiry is abstract and the infringement one is actuality. Roberts. Thank you, counsel. Mr. Jay, you have three minutes. Thank you, Mr. Chief Justice. Everything Hargis wanted to put in at the trademark board, it could have put in. If it had won, it would have had a valuable protection. Justice Kennedy, this goes to why litigants would seek preclusion. It would have been protected against an infringement action based on the same facts. And that is why we think that the Federal Circuit has been for years affirming the idea that once you've already won in one tribunal in an infringement action, the trademark board shouldn't reach a different decision. The trademark board should not be registering marks that infringe. It should not be withholding registration for marks that don't. Let me point up – let me be absolutely clear about what the trademark board can consider. I must respectfully disagree with my friend about what he said. If you want to consider the logo, the board can consider the logo. Look at the Toro case about the mark Lawn Pup, which had a mark which was used with a little dog. Look at the Federal Circuit's decision in Kenner which dealt with the mark Play-Doh, in which the Federal Circuit went on and on about the fact that the two products were used with trade dress that was exactly the same. Even though the mark was the same. And it was a peculiar shade of green and used on dry-cleaning pads. Suppose I want to do that and I own the trademark. A junior person comes in and he has a different shade of green. Okay? Seems different. Can I introduce evidence that the people who use these particular kinds of dry cleaners are colorblind? And so they won't recognize the difference. That has nothing to do with the use. It has only to do with the customers or the conditions in which they are used. Can I introduce that at the board or not? Let me, I think no, but let me contrast. But the reason why what Hargis could put in, what it needed to put in, this just goes to the essential difference. And this is what Justice Kagan brought out in her colloquy with my friend, that there is a restricted, there is a restriction in these registrations. One's restricted to aerospace fasteners, one's restricted to building fasteners. And that, the differences between those marks, that's what the board took evidence on and considered. It didn't just make up what the nature of the fastener market was. It took evidence on it. And that's why at 61a and 64a of the Petition Appendix, it explains it understands that the fastener market is not monolithic. It explains that there's not direct competition, but it understands that there's likely confusion because if you're looking for a fastener and you think that, oh, I'll buy a seal-type fastener, it must be made by the aerospace people. That's what they were getting at. And that's evidence that the board could come in. My friend said repeatedly that the evidence was different between the proceedings. Respectfully, that doesn't matter. Page 52 of our blue brief, Section 27 of the Restatement of Judgments, new evidence is not what matters. The question is, were they asking the same question? And the trademark board could and did take evidence about the question whether aerospace fasteners are so different from construction fasteners that despite the phonetic identity of the marks, we should let Hargis use its mark on these different goods. And the board said, we've looked at the differences, but we find that they are intrinsically related because they're both fasteners, even if different. Maybe that was right, maybe that was wrong. We, of course, think it was right. But if Hargis thought it was wrong, its remedy was to appeal, not to relitigate. Kagan. Mr. Kavial suggested that he read from two cases, which suggests some kind of different standard. The difference, Justice Kagan, is if both cases recite modems as the good, the board doesn't look beyond that and say, oh, fancy modems and cheap modems. But if you recite different goods in your two registrations, it absolutely does look at the differences between those goods. And that is why there's preclusion here. Thank you, counsel. The case is submitted.